66 S.E.2d 565 (1951)
191 Va. 606
BURKHARDT et al.
v.
BOARD OF ZONING APPEALS et al.
Supreme Court of Appeals of Virginia.
September 5, 1951.
*566 Robert Lewis Young, John G. May, Jr., Richmond, for plaintiffs in error.
William H. King and McGuire, Eggleston, Bocock & Woods, all of Richmond, for Safeway Stores, Inc., defendant in error.
Brockenbrough Lamb, Jr. and Christian, Barton, Parker & Boyd, all of Richmond, for The Life Ins. Co. of Virginia, defendant in error.
Before EGGLESTON, SPRATLEY, BUCHANAN, MILLER, SMITH and WHITTLE, JJ.
EGGLESTON, Justice.
Safeway Stores, Incorporated, applied to the Commissioner of Buildings of the city of Richmond for a permit to erect a one-story brick and concrete store building on a vacant lot on the eastern side of North Sheppard street, between Park and Patterson avenues. The proposed building was to extend to the property line on Sheppard street and front 50 feet thereon. It was to run back a distance of 135 feet, leaving a space of 15 feet between its rear and the line of the adjoining property. The attached diagram, while not drawn to scale, will show the dimensions of the lot and proposed building and illustrate some of the pertinent factors hereinafter discussed.
*567 
The Building Commissioner denied the permit on the ground that the proposed plan did not conform to the zoning ordinance which requires that buildings erected in that area have front and rear yards of not less than 25 feet in depth.
Under section 17.19 of the city charter[1] the applicant appealed to the Board of Zoning Appeals which, after having heard those advocating and opposing the plan, made "a variance from the requirements of the zoning ordinance" and granted the *568 permit on condition that a wall be built across the 15-foot yard at the rear of the building, or some other provision be made, to prevent the use of this space for traffic passing between Patterson and Park avenues.
From this action of the Board of Zoning Appeals George G. Burkhardt and Helen E. Burkhardt, whose property adjoins the lot on the east, and other objectors appealed to the Law and Equity Court of the city of Richmond under section 17.22 of the city charter. After reviewing the record of the Board's action under a certiorari, and hearing other evidence, §§ 17.23, 17.24, the court entered an order affirming the decision of the Board. To review that judgment the present writ of error was allowed.
At the outset we are met by a motion to dismiss the writ on the ground that the applicable statutes do not provide for a review by this court of the action of the Law and Equity Court of the city of Richmond in such cases, and that hence we have no jurisdiction of the matter.
The argument is that the General Assembly intended that zoning laws be comprehensive and complete as to remedy, in order that controversies arising thereunder may be settled speedily; that in neither the various statutes dealing specifically with zoning in cities and towns, Code, §§ 15-819 to 15-843, both inclusive, nor in the sections of the charter of the city of Richmond relating to zoning, §§ 17.01 to 17.37, both inclusive, is there any provision for a review by the Supreme Court of Appeals of the action of the court of record in reviewing the decision of a board of zoning appeals.
In support of their position the defendants in error rely on Richmond Cedar Works v. Harper, 129 Va. 481, 106 S.E. 516, in which we held that the Workmen's Compensation Act, as originally enacted in 1918, Acts 1918, ch. 400, p. 637, which provided for a review by certain nisi prius courts of an award by the Industrial Commission, did not contemplate that a further appeal might be taken from the action of the reviewing court to the Supreme Court of Appeals under the general statute. Code 1919, § 6336, now Code 1950, § 8-462.
As the opinion in that case pointed out, the language then used in section 61 of the Workmen's Compensation Act with respect to appeals from the Industrial Commission, and in other related sections, clearly indicated that the General Assembly had "manifested its intention to limit the rights and remedies of those interested to the provisions of the act itself, and thus to exclude the application of the general statute with reference to appeals and writs of error." 129 Va. at page 492, 106 S.E. at page 520.
We find in the pertinent sections of the charter of the city of Richmond, dealing with appeals from the Board of Zoning Appeals, §§ 17.22, 17.23, 17.24, no such language which would indicate a legislative intent that the remedy therein provided for a review of the action of the Board by a nisi prius court was to be exclusive and that the Supreme Court of Appeals was to be without jurisdiction of the matter.
We are of opinion that this court has jurisdiction of the matter under Code, § 8-462(3)(c), which authorizes us to entertain a petition for appeal or writ of error by "Any person thinking himself aggrieved: * * * By a final judgment, decree, or order in any civil case". (Emphasis added.) Clearly, this is a civil case and inasmuch as it involves "some matter not merely pecuniary", we are not concerned with the requirements as to the jurisdictional amount. Code, § 8-464.
Nor are we shaken in this view by the fact that whereas Code, § 15-876.1,[2] expressly *569 provides for an appeal to the Supreme Court of Appeals from an order of a court of record which reviews the action of a board of zoning appeals arising under the laws relating to zoning in certain counties, no such or like provision is found in the general statutes dealing with zoning in cities and towns.
So much of this section as allows an appeal to "any party petitioner or respondent who is aggrieved by the court's action" is merely declaratory of the right existing under the general statute. Code, § 8-462. Whether the right of appeal which is granted by section 15-876.1 to "a taxpayer, officer, department, bureau or board of the county", is merely declaratory of the right under the general statute, or is an extension of such right, we need not here decide.
The motion to dismiss is overruled.
Section 17.24 of the charter of the city of Richmond outlines the "Powers and Duties of the Court" in reviewing the action of the Board of Zoning Appeals in this language: "The court shall review the record, documents and other matters produced by the board pursuant to the issuance of the writ and may reverse or modify the decision reviewed, in whole or in part, when it is satisfied that the decision of the board is contrary to law or that its decision is arbitrary and constitutes an abuse of discretion. Unless it is made to appear that the decision is contrary to law or is arbitrary and constitutes an abuse of discretion the court shall affirm the decision. If the court finds that the testimony of witnesses is necessary for a proper disposition of the matter it may hear evidence."
The plaintiffs in error assign a number of reasons why they say the lower court, acting under the principles laid down in this section, should have reversed rather than affirmed the decision of the Board.
First, they say, the application or notice of appeal filed by Safeway Stores, Incorporated, failed to measure up to the requirement of section 17.19 that it specify the "grounds thereof," but "merely asked for a special privilege which, by the provisions of section 17.20(b) of the charter, the Board was expressly prohibited from granting."
We do not agree with this contention. The application recited the dimensions of the proposed structure. It disclosed that the front of the building was to extend to the property line on Sheppard street, that its rear was to be 15 feet from the line of the Burkhardt property, and that on either side of the building there were to be spaces for off-street parking of motor vehicles.
In the space indicated for a "Statement of Request Giving Principal Points on which Application is Based," it stated: "This will be the only building on lot which fronts on three streets. The buildings on the other side of Sheppard Street all come out to the street line. The size building called for is the minimum needed, and the shape and location shown on Plot Plan is what is needed to provide the ever-increasing demand for parking space for customers so as not provide congestion on the streets."
The application was accompanied by a plat which showed the location of the lot and the proposed building thereon, and the location of the various buildings in the entire block as well as those in the adjoining blocks fronting on Sheppard street and Park and Patterson avenues.
The only question involved on the appeal was whether the Board should grant a variance from the general zoning ordinance as to the depth of the front and rear yards adjacent to the proposed building. We think the application or notice of appeal gave a sufficient specification of the "grounds" upon which such appeal was based.
Next, it is said that the Board acted arbitrarily in not granting Burkhardt a continuance and opportunity of fully presenting his objections to the change.
From the transcript of the hearing before the Board it appears that Burkhardt, a member of the Bar of the city of Richmond, appeared on behalf of all parties objecting to the granting of the variance. He spoke at some length, giving his objections *570 to the change, which were, in substance, that as owner of the adjoining property he felt that the proposed building should be required to comply with the general zoning law in effect in the block and have front and rear yards of 25-foot depth each.
Later during the hearing he indicated that he would be willing to waive the requirement for a 25-foot yard in the rear of the building and consent to a space of only 15 feet, as the proposed plan indicated, provided he could be assured that the lesser space would not be used as a street-to-street passageway for vehicles.
It is true that he asked for a continuance in order that he might have other objectors present their views to the Board. When asked by the chairman of the Board, "What do you expect to prove by them?" his reply was, "I expect to prove along the lines of what I am telling you."
The official minutes of the Board show this ruling on Burkhardt's motion for a continuance: "They will consider as proven all of the statements by Mr. Burkhardt and counsel and hence deny a continuance."
Obviously, then since Burkhardt had appeared on behalf of all objectors, expressed himself fully, stated that at a future hearing he would present witnesses who would testify to the same effect as he had, and the Board considered "as proven" all of his statements, neither he nor those for whom he appeared were prejudiced by the refusal of the Board to grant a continuance.
Section 17.21 of the charter provides in part as follows: "Every decision of the board shall be based upon a finding of fact based on sworn testimony which finding of fact shall be reduced to writing and preserved among its records."
The plaintiffs in error say that the Board made and incorporated in its record no finding which showed that it had the jurisdiction or authority to grant the variance from the general zoning ordinance. Hence, they say, the Board's decision was illegal and void
The reasons for such a provision in the statute are set forth in McQuillin, Municipal Corporations, 3d Ed., Vol. 8, § 25.272, p. 517, as follows: "Quite commonly, a zoning board of adjustment or review is required by law to state the reasons or grounds for the action that it takes, in order (1) that the parties may be apprised thereof and (2) that a court on review may know such grounds or reasons and whether or not the board has acted within its discretion or has acted arbitrarily." See also, 58 Am.Jur., Zoning, § 225, p. 1060.
The Board's finding is incorporated in its minutes of the meeting, at which witnesses favoring and opposing the change were heard and the application considered. The minutes recited the filing of the application with the Commissioner of Buildings for a permit to erect the proposed building, and the denial by that official on the ground that the specifications for the front and rear yards did not meet the requirements of the general zoning ordinance which had classified this area as a "G Local Business District."
The minutes further recited that, "At the hearing it was brought out that the property was acquired in 1944 and permit was granted for the construction of the building, fronting on Sheppard Street, but due to war conditions the building was not completed. The present plans vary slightly from the original plans on which permit was granted."
Upon consideration of these facts the following "resolution" was adopted:
"Whereas, the stores in the neighborhood are built to the street line and an additional 10' for the rear yard would serve no useful purpose;
"Now, therefore, be it resolved that the Board does hereby make a variance from the requirements of the Zoning Ordinance and grants the permit on condition that a wall is built across the 15' rear yard so as to prevent through traffic from Patterson Avenue to Park Avenue or some provision is made satisfactory to the Department of Safety to prevent through traffic from Patterson Avenue to Park Avenue."
While, in view of the supporting evidence which we shall discuss, the resolution *571 or finding might have been amplified, yet, as drawn, its purpose and meaning are quite clear. The finding is that "the (other) stores in the neighborhood are built to the street line and an additional 10' for the rear yard (required by the general ordinance) would serve no useful purpose."
Based upon this finding the resolution granted the variance, subject to conditions designed to meet the wishes of Burkhardt that the rear yard should not be used as a street-to-street thoroughfare.
Such finding, we think, meets the test prescribed by the authorities cited above. It is sufficiently clear (1) to apprise the parties thereof, and (2) to enable the court of review to determine whether the Board has acted within its discretion or has acted arbitrarily.
This brings us to a consideration of the vital question in the case which is, Does the evidence adduced make out a case in which the Board had the jurisdiction and authority under the charter to grant a variance from the general zoning ordinance?
The determination of the matter turns upon the interpretation and application of subsection (b) of section 17.20, which gives the Board of Zoning Appeals both the "powers" and "duty," "To grant variations in the regulations when a property owner can show that his property was acquired in good faith and where by reason of the exceptional narrowness, shallowness or shape of a specific piece of property at the time of the effective date of the ordinance or where by reason of the exceptional topographical conditions or other extraordinary or exceptional situation the strict application of the terms of the ordinance actually prohibit or unreasonably restrict the use of the property, or where the board is satisfied, upon the evidence heard by it, the granting of such variation will alleviate a clearly demonstrable hardship approaching confiscation as distinguished from a special privilege or convenience sought by the owner; provided, however, that all variations granted shall be in harmony with the intended spirit and purpose of this chapter and the ordinance." (Emphasis added.)
It will be observed that under this provision the Board may grant a variance (1) "when a property owner can show that his property was acquired in good faith", and (2) "where by reason of * * * other extraordinary or exceptional situation the strict application of the terms of the ordinance actually prohibit or unreasonably restrict the use of the property".
With respect to whether the property was acquired in good faith, the Board found and wrote in its minutes that in 1944 a permit was granted to Safeway Stores, Incorporated, to construct a building on its lot, fronting on Sheppard street, under plans which were substantially the same as those proposed and approved by the Board. Because of war conditions the building was not constructed at that time.
There was ample evidence before the Board to warrant a finding that a strict application of the terms of the general ordinance would unreasonably restrict the use of the property. According to the plat found among the original exhibits and the diagram printed herein, all of the buildings on the west side of Sheppard street, between Park and Patterson avenues, opposite the proposed store, are built to the street line. The plat and diagram also show that the building contemplated by Safeway Stores would be the only building in the block fronting on the east side of Sheppard street. Under these circumstances, where there are no adjoining property owners fronting on Sheppard street, to require that the proposed store be set back 25 feet from the street line would promote no intent of the zoning ordinance and serve no useful purpose.
Likewise, the requirement of a 25-foot yard in the rear of the proposed building would serve no useful purpose. There are no adjoining property owners in the block with buildings fronting on Sheppard street who would be benefited thereby. As shown by the plat, the building on the Burkhardt property, to the rear of the proposed store, fronts on Park avenue. Burkhardt admitted before the Board that his main concern was that the strip in the rear of the proposed building should not be used as a *572 thoroughfare rather than that it conform to the 25-foot width required by the general ordinance. Clearly, this warranted the finding by the Board that "an additional 10' for the rear yard would serve no useful purpose," and the condition attached to the granting of the variance has met Burkhardt's real objection.
After the Law and Equity Court had reviewed the record and exhibits upon which the Board had acted and heard other evidence, it reached the conclusion embodied in its final judgment, that "the decision of the Board of Zoning Appeals herein appealed from is neither contrary to law nor did the Board in reaching such decision act arbitrarily and in abuse of its discretion." We concur in that view.
The final assignment of error is to the action of the trial court in striking from the petition for appeal presented to it several paragraphs which alleged that granting the variance and permitting the construction of the store, together with the establishment of parking spaces adjacent thereto, would tend to pollute the area with exhaust gases and increase traffic and congestion, to the detriment of the residents of the area and passing pedestrians.
On motion these allegations were stricken because it was shown that the lot and the area surrounding it were zoned as "G Local Business District;" that under the general zoning ordinance lots in such districts could properly be used for the off-street parking of automobiles, and indeed that commercial buildings in such districts were required to provide permanent off-street parking and off-street facilities for loading and unloading merchandise. Since the establishment of parking areas adjacent to the proposed store were permitted under the general zoning ordinance, the lower court concluded that these allegations were immaterial in determining whether the requested variance should have been granted.
The action of the trial court in striking these allegations was plainly right and requires no discussion.
We find no error in the record and the judgment under review is affirmed.
NOTES
[1] This and other sections referred to of the charter of the city of Richmond will be found in Acts of Assembly of 1948, ch. 116, p. 246,ff.
[2] "§ 15-876.1. Decision of court and appeal therefrom.The court may reverse or affirm, wholly, or partly, or may modify the decision brought up for review. Appeals to the Supreme Court of Appeals as in other cases may be taken by any party petitioner or respondent who is aggrieved by the court's action or who is a taxpayer, officer, department, bureau or board of the county."