# CIRCUIT COURT OF THE CITY OF RICHMOND

David Eugene Tolman et al.

v.

Board of Zoning Appeals
of the City of Richmond

September 10, 1998

Case No. HJ-1078-3

BY JUDGE T. J. MARKOW

This matter is before the court on an appeal of a decision of the Board of Zoning Appeals of the City of Richmond and the Respondent's Motion for Summary Judgment.

The Board of Zoning Appeals granted a variance on May 6, 1998, to Tracer Corporation, the owner of a three story apartment building located at 2306 Monument Avenue in the City of Richmond. The variance allows the building, located in a single or double family residential area, to be used for seven apartments. The Building was constructed in the early 1900's and originally had one large apartment on each floor. In 1927, the City adopted its first zoning ordinance, which placed the property in an A-1 residential district which did not permit multi-family uses. At that time the building became a lawful nonconforming use.

In 1933 and 1935, City officials granted two building permits to the then owner, which erroneously authorized an increase in the number of apartments in violation of the City zoning regulations governing nonconforming uses. The building was then converted to its present state of seven apartments and has

remained as such for the past sixty years. At various points since the conversion in the 1930's, the City has mistakenly issued two building permits, two utility permits, and a certificate of occupancy, all of which required a determination that the seven apartments in the building were in compliance with the zoning ordinance.

In late 1997, the first floor experienced a fire and Tracer applied for a building permit to repair the fire damage. The City Zoning Administrator determined that the previous permits had been issued improperly and ruled that Tracer had a right to use the property as a nonconforming use only for the original three apartments and would be required to convert the property back from seven to three. Tracer applied for a variance to permit it to continue using the property as a multi-family dwelling with seven apartments. A hearing was held before the BZA on May 6, 1998, and the variance was granted.

The petitioners in this case are four owners of nearby property, who contend that the Board's decision to grant the variance should be reversed. First, Petitioners assert that the Respondent, BZA, exceeded its statutory authority in granting a variance for a "change in use." Second, the Petitioners claim that Tracer failed to demonstrate the requisite statutory hardship in order for a variance to be granted.

The decision of a board of zoning appeals is "presumed to be correct" on appeal, and the trial court's review is "limited to a determination whether a board has applied erroneous principles of law or, when the board's discretion is involved, whether the decision is plainly wrong and in violation of the purpose and intent of the zoning ordinance." *Spence v. Board of Zoning Appeals*, 255 Va. 116, 119 (1998). "Judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion." *Board of Zoning Appeals v. Fowler*, 201 Va. 942, 948 (1960).

Virginia law defines "variance" as a deviation from a zoning ordinance. A variance, however, "shall not include a change in use which change shall be accomplished by a rezoning or by a conditional zoning." Va. Code § 15.2-2201. Respondent argues that this restrictive statutory definition does not apply in this matter since the power of the Board of Zoning Appeals, in the City of Richmond, is derived from the City Charter. Section 17.20(b) of the City Charter authorizes the BZA "to grant variations in the regulations ... ." Although the charter does not state that the variation cannot be for a use, the Charter does not define the term variance at all. Nor is the term defined in the Richmond Zoning Ordinance. Thus, one must look to state law for the parameters of the power granted and asserted in the Charter. Variance as defined by state law excludes a deviation for a "change in use." In *Bridge*

*Corp. v. City of Richmond*, 203 Va. 212 (1962), the City argued that its Charter overrode state law. The Supreme Court held to the contrary: "This position is untenable as the charter and state law relate to the same subject matter, have the same general purpose and are *in pari materia*." In the instant matter, the charter and state law can and should be read together and effect given to each.

The Court finds, however, that the variance was not for a change in use and therefore did not exceed the BZA's power. Section 32-800.2 of the City Code states in pertinent part as follows:

> (1) Except as specifically permitted by this article, a nonconforming use shall not be extended, expanded, enlarged or moved to occupy a different or greater area of land, buildings or structures than was occupied by such use at the time it became nonconforming, providing that a nonconforming use may be extended throughout any parts of the building which were specifically and lawfully designed and arranged for such use at the time it became nonconforming so long as such extension does not result in any increase in the required number of off street parking spaces under the terms of the Chapter or an increase in the number of dwelling or lodging units in the building. No material change in the nonconforming use or material change in the program or operating characteristics of a nonconforming use shall take place that would increase the intensity of the use.

In *Tidewater Utilities Corp. v. City of Norfolk*, 208 Va. 705 (1968), the Supreme Court ruled that a utility company was entitled to a variance from this type of ordinance and was allowed to physically expand its nonconforming use. In the present case, the reconfiguration of the apartment building from three to seven apartments violated this section, because the nonconforming use had been extended throughout the building in a way that improperly increased the number of dwelling units and the required number of off street parking spaces. This would also be considered an "increase in the intensity of the use." This ordinance which prohibited the change in the nonconforming use was the regulation from which Tracer received a variance.

The variance did not allow a change in use, it allowed expansion in a nonconforming property. The Tracer property has been a multi-family residence since it was constructed as three apartments in the 1900's. After the granting of the variance, it remains a multi-family residence. The variance simply allows an increase in the intensity and the number of dwellings.

The Petitioner's second argument is based on the premise that the hardship shown in order to get a variance must arise from a physical condition of the property which is unique to that property and not shared by other properties in the same vicinity. The relevant charter provision provides that the BZA has the authority:

> To grant variations in the regulations when a property owner can show that his property was acquired in good faith and where by reason of the exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the effective date of the ordinance or where by reason of the exceptional topographical conditions *or other extraordinary or exceptional situation the strict application of the terms of the ordinance actually prohibit or unreasonably restrict the use of the property*, or where the board is satisfied, upon the evidence heard by it, the granting of such variations will alleviate a clearly demonstrable hardship approaching confiscation as distinguished from a special privilege or convenience sought by the owner, provided, however, that all variations granted shall be in harmony with the intended spirit and purpose of this charter and the ordinance.

City Charter § 17.20(b) (emphasis added). In *Burkhardt v. Board of Zoning Appeals*, 192 Va. 606 (1951), the Supreme Court found that there was ample evidence before the board to warrant a finding that a strict application of the terms would "unreasonably restrict the use of the property." In that case, the variance was for a required set back of twenty-five feet in the front and rear of a proposed building. The evidence before the board was that all the other buildings on the street were built to the street line and this was the only building on the block fronting a particular street. "Under these circumstances, where there are no adjoining property owners fronting Shepard Street, to require that the proposed store be set back twenty-five feet from the street line would promote no intent of the zoning ordinance and serve no useful purpose. Likewise, the requirement of a twenty-five foot yard in the rear of the building would serve no useful purpose." *Id.* at 617. The "exceptional situation" was not based on any physical condition of the land.

In the case of *Azalea Corp. v. City of Richmond*, 210 Va. 636 (1960), the court found that a variance should have been granted to allow the construction of three commercial driveways across a residentially zoned area. Here the court found that the limited access to the property from major roadways and the financial loss that would result from denying the variance was an "exceptional or extraordinary" circumstance in that it "affects Azalea's entire tract of land;

that the restricted use is unreasonable; [and] that the granting of the variance would do substantial justice ... ." Once again there was no discussion of any physical conditions of the land itself in determining hardship.

In the case at hand the BZA found that:

A majority of the board is satisfied that the property was acquired in good faith and that an exceptional situation exists due to the numerous sanctions of the use by the City, the long history of the use and the substantial economic loss which would otherwise be suffered by the owner whereby strict application of the use requirements unreasonably restricts its use and the granting of a variance in this case will be in harmony with the intended spirit and purpose of the ordinance and the powers of the board.

The Supreme Court cases indicate that the hardship requirement is not limited to the physical condition of the land and that financial loss can be a factor.

In sum, the court finds that the variance was not a change in use and therefore did not exceed the authority of the BZA. Furthermore, the court finds that the Board's decision that this is an exceptional circumstance is not arbitrary and capricious, nor is it contrary to the law.

Summary judgment is hereby entered in favor of the Respondent. The decision of the Board of Zoning Appeals is sustained.